JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Timothy Moulder, appeals from his conviction in the Cuyahoga County Court of Common Pleas, Criminal Division, in which a jury found him guilty of aggravated murder, together with a capital specification of the prevention of testimony. The appellant was sentenced to life without parole.
 {¶ 2} On February 12, 2001, Moulder was indicted by the Cuyahoga County Grand Jury. Specifically, the indictment charged that he unlawfully and purposely and with prior calculation and design, caused the death of Robert Cutler, Jr., in violation of R.C. 2903.01. The indictment contained a capital specification charging murder to escape an accounting for another crime and a second capital specification charging murder to prevent testimony.[1]
 {¶ 3} The instant matter stems from a robbery which occurred in April 1999. On April 1, 1999, the victim, Robert Cutler, Jr., was robbed at gunpoint at his roofing business located on West 110 Street in the City of Cleveland. During the robbery, the victim was pistol whipped by the perpetrator, bound with duct tape, and robbed of over $4000 in cash. Moreover, the perpetrator took the victim's drivers license and told him that if he reported this robbery to the police, he would kill him and his family. The victim notified the police, and an investigation ensued concerning the robbery.
 {¶ 4} A review of the record indicates that the victim knew who the perpetrator was and that he believed the perpetrator to be a friend of one of his employees. In time, the police were notified that Brian Justice, a former employee of the victim and roommate of Moulder, had indicated that Moulder was the perpetrator of the April 1999 robbery. Following this lead, Detective Booth of the Cleveland Police Department prepared a photo array containing Moulder's photograph, which he presented to the victim. Immediately upon viewing the photo array, the victim identified Moulder as the perpetrator of the robbery.
 {¶ 5} Because of the positive identification, Moulder was formally indicted on the crime of aggravated robbery, and warrants for his arrest were issued.
 {¶ 6} The authorities were unable to locate Moulder, so they arranged for his photo and warrant information to be listed in a CrimeStoppers pamphlet, which was circulated throughout the county. On January 3, 2001, Maritza Gonzales, an employee of BP Oil, recognized the photograph in the pamphlet as being the boyfriend of her co-worker, Kathy Senkar. As a result, Gonzales and Julie Bruno, another friend of Senkar's, went to Senkar's residence to confront her with the CrimeStoppers pamphlet. Obviously distraught that her fiancee was listed in the CrimeStoppers pamphlet, Senkar confronted Moulder with the charge.
 {¶ 7} Testimony revealed that Moulder initially denied any type of involvement in the robbery, but soon after, he changed his story to indicate that he was involved in the crime, not as a direct participant, but rather as the get-a-way driver of the car. Further, Moulder pinned the robbery on his former roommate, Justice.
 {¶ 8} In order to fully investigate the charges being levied against him, Moulder contacted his brother-in-law, Sergeant Christino DeJesus, an officer with the Cleveland Police Department. DeJesus, utilizing secure police channels, discovered that Moulder was wanted for robbery and that he had been positively identified by the victim of the crime through a photo array. DeJesus then informed Moulder of his findings. Rather than turn himself in to the authorities, Moulder continued to avoid the authorities.
 {¶ 9} On January 4, 2001, the body of Robert Cutler, Jr. was found in the yard of a home in Bay Village, Ohio, and it was determined that he had been murdered. Although the police did not have any firm leads in connection with this murder, it was later discovered that on January 4, 2001, Moulder had called off sick from his job at Hodell-Natco in Valley View, although his fiancee testified that he had left for his job on the morning of January 4, 2001. Through extensive investigation, the police were able to track Moulder's steps on the day of the murder.
 {¶ 10} Evidence presented at trial indicated that Moulder was observed via videotaped surveillance at the Speedway gas station in Bay Village where he made a purchase with a credit card and looked at a telephone book. This occurred between 8:14 a.m. and 8:19 a.m. Shortly thereafter, at approximately 8:23 a.m., Moulder utilized an automatic teller machine to withdraw ten dollars from the National City Bank in Westlake, which was six-tenths of a mile from the Speedway gas station. At 9:52 a.m., Moulder called home and spoke with Senkar and notified her that he was ill and was coming home. From 10:00 a.m. to approximately 10:20 a.m., Moulder placed a series of telephone calls from the pay phone in the lobby of the Lakewood Medical Center, which was a mere two-tenths of a mile from the Speedway gas station. The pay phone records indicated that Moulder initially attempted to phone the victim's roofing business. He then called Senkar once again and notified her that he would not be coming home from work because he was feeling better. He again phoned the victim's business and notified the answering service that his home had a roofing emergency and he desperately needed someone to return his call. He left the name of Tim DeJesus with the answering service. At 10:37 a.m., he again phoned the victim's business, this time from Huntington Beach, six-tenths of a mile from the murder scene, and advised the answering service that he was calling from a payphone and could not continue to feed the phone quarters. The answering service, sensing the urgency, patched Moulder directly through to the victim. Records indicate that Moulder and the victim spoke for over eight minutes. At 10:53 a.m., Moulder phoned Senkar from the same Huntington Beach pay phone and notified her that he was now feeling ill again and would be coming home from work.
 {¶ 11} At trial, Susanna Cutler, the victim's wife, testified that she spoke with her husband at 12:41 p.m. Mrs. Cutler testified that her husband told her he was on his was to Bay Village for an emergency job because a tree had fallen through someone's roof. This was the final time that Mrs. Cutler spoke to her husband.
 {¶ 12} At approximately 2:45 p.m., Shelley Lawrence returned to her home in Bay Village only to find the victim's roofing truck in her driveway. Not knowing why the truck was at her home, Mrs. Lawrence phoned her husband to determine if he had scheduled some type of roof service. Since her husband had not scheduled any type of service, Mrs. Lawrence notified the Bay Village police at approximately 3:30 p.m. A police officer arrived to investigate, and at this time, the body of Robert Cutler, Jr. was found on the side of the house. The cause of death was later determined to be three bullets, fired at close range, to the back of the victim's head. Clutched in the victim's hand was a message indicating Tim DeJesus and the address of the home in Bay Village, at which he was found murdered.
 {¶ 13} On January 12, 2001, after much investigation, Moulder was arrested on the prior robbery charge and brought to the Bay Village police department for questioning concerning the homicide. Initially, he denied any involvement in the crime. Later testimony, however, revealed that he had admitted to Senkar that he had allegedly hired two acquaintances from Lucasville prison to threaten the victim into recanting his testimony concerning the robbery, but that the entire situation got out of hand and they had to kill the victim.
 {¶ 14} During the course of the trial, the state presented in excess of 40 witnesses in addition to numerous exhibits, including but not limited to telephone records, personal records, and surveillance tapes. At the conclusion of the trial, the jury returned a unanimous verdict of guilty. Despite, their unanimous verdict, the jury was deadlocked at the sentencing phase. Because of the deadlock, the lower court dismissed the jury and proceeded to sentence Moulder to life without the possibility of parole.
 {¶ 15} It is from the verdict and sentence of the lower court that Moulder now appeals. He presents twelve assignments of error for this court's review. For the following reasons, the appellant's appeal is not well taken.
 {¶ 16} The appellant's first assignment of error states:
 {¶ 17} I. DEFENDANT WAS DENIED DUE PROCESS OF LAW AND HIS RIGHT OF CONFRONTATION WHEN THE COURT PERMITTED EVIDENCE OF AN OUT-OF-COURT IDENTIFICATION RELATED BY SOMEONE OTHER THAN THE PERSON MAKING THE IDENTIFICATION.
 {¶ 18} The appellant argues that the lower court erred in allowing Detective Thomas Booth to testify that the victim had previously identified the appellant as the perpetrator of the aggravated robbery of April 1, 1999. He further contends that the lower court erred in permitting Detective Booth to embellish the statements made by the victim at the time of identification. In allowing the detective to testify, the appellant contends, he was denied his constitutional right of confrontation and cross-examination.
 {¶ 19} Evid.R. 801(c) defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to the truth of the matter asserted. A statement, as included in the definition of hearsay, is an oral or written assertion or nonverbal conduct of a person, if it is intended by him as an assertion. Evid.R. 801(A).
 {¶ 20} In reviewing the record of the proceedings in relation to the testimony offered by Detective Thomas Booth, it is apparent that the identification testimony offered by the detective was not utilized to prove the truth of the fact that the victim identified the appellant as the perpetrator of the aggravated robbery. Simply, the testimony was utilized by the state to show that the appellant had a motive for killing the victim. Specifically, the state argued that the victim was murdered to prevent his testimony in a related crime.
 {¶ 21} The appellant was charged with the capital specification contained in R.C. 2929.04(A)(8), which states:
 {¶ 22} (8) The victim of the aggravated murder was a witness to an offense who was purposely killed to prevent the victim's testimony in any criminal proceeding and the aggravated murder was not committed during the commission, attempted commission, or flight immediately after the commission or attempted commission of the offense to which the victim was a witness to an offense and was purposely killed in retaliation for the victim's testimony in any criminal proceeding.
 {¶ 23} As such, it was necessary for the state to offer the testimony of the detective in order to sustain its burden of proving the capital specification in relation to the murder. Specifically, the state argued during trial that the testimony was not being used to prove the truth of the fact that the victim identified the appellant in a photo array, but rather to show the prior knowledge of the appellant, that he was aware that the victim had viewed a photo array and had used that photo array to identify the appellant. The identification by the victim was key to establishing the element that the victim was a specific witness to that crime; therefore, it was necessary to establish that knowledge on the part of the appellant.
 {¶ 24} Next, we note that the appellant failed to object to any of the alleged embellished testimony regarding the above-noted evidence; therefore, in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. SeeState v. Tichon (1995), 102 Ohio App.3d 758, 767. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163,166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83.
 {¶ 25} In the instant case, even if the introduction of this alleged embellished testimony was error, it did not rise to the level of plain error necessary for this court to reverse. There was substantial other evidence available to the jury to find the appellant guilty beyond a reasonable doubt of the charged offenses even if the embellished testimony of the detective was excluded from the trial. Accordingly, in light of the other evidence, this court cannot say that but for this alleged error, the appellant would not have been found guilty. Therefore, the appellant's first assignment of error is without merit.
 {¶ 26} The appellant's second assignment of error states:
 {¶ 27} II. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT ADMITTED STATEMENTS MADE TO THE POLICE BY ROBERT CUTLER, JR.
 {¶ 28} Here, the appellant argues that the lower court erred in admitting the statements made by Robert Cutler, Jr. to the investigating police officers following the robbery of April 1, 1999. He contends that the statements made by the victim did not qualify under Evid.R. 803(2), the excited utterance exception to the hearsay rule, because an inordinate amount of time had elapsed between the actual robbery and the statements made to the investigating officers. Specifically, Evid.R. 803(2) provides that the following type of statement, although hearsay, is admissible:
 {¶ 29} A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 {¶ 30} * * * [A]n appellate court should allow a wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event. State v. Duncan (1978), 53 Ohio St. 215, 219. Applying the wide discretion prescribed by Duncan, this court must examine whether, pursuant to Evid.R. 803(2), the victim's statements were (1) related to a startling event or condition; (2) made while he was under the stress of excitement; and (3) whether his stress was caused by the event or condition.
 {¶ 31} In reviewing the record and evidence, this court cannot conclude that the lower court erred in admitting the statements made by the victim under the excited utterance exception to the hearsay rule. Evid.R. 803(2). The victim of the robbery, Robert Cutler, Jr., had been pistol whipped and bound with duct tape. While constrained, the perpetrator repeatedly threatened to injure the victim if he did not cooperate and turn over any money that he had in his possession. Further, after assaulting and robbing the victim, the perpetrator took the victim's identification and threatened to harm him and/or his family if he contacted the authorities.
 {¶ 32} Despite these threats, the victim managed to free himself after the robbery and contact the authorities. Granted, the evidence adduced at trial revealed that Cutler, Jr. was calm during his 9-1-1 emergency call, but viewed in relation to his actions and demeanor after the police arrived to investigate, this court cannot conclude that his statements were inadmissible. The testimony of the investigating officers reinforces this court's determination.
 {¶ 33} First, officers testified that the victim was anxious and clearly distraught. The officers had to repeatedly urge the victim to calm down, relax and if necessary lean against one of the company trucks in order to slow down. The officers described the victim as anxious, clearly under the stress of the events, and unable to calm or slow his speech. Moreover, during this investigation, the victim was under the duress of having been pistol whipped and was attempting to self-treat his wounds while explaining what had occurred during the robbery. Clearly, the appellant's reliance on the fact that the 9-1-1 tape portrayed the victim as calm is misguided as it does not take into account the physical manifestation of stress, unease, and excitement, which the investigating officers witnessed firsthand and which would not be portrayed on a two-dimensional audio recording.
 {¶ 34} In Duncan, supra, each case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation," at 220. As such, this court cannot conclude that the lower court erred in admitting the investigating officers' testimony concerning the statement made by the victim while under the continued stress and excitement of being pistol whipped, bound and robbed at gunpoint. There is simply no evidence which would indicate that the victim had the time to reflect on the events which occurred prior to the police officers' arrival and the beginning of their investigation. Therefore, the appellant's second assignment of error is not well taken.
 {¶ 35} The appellant's third assignment of error states:
 {¶ 36} III. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE EVIDENCE CONCERNING DEFENDANT'S BAD CHARACTER WAS OFFERED AT TRIAL.
 {¶ 37} The appellant argues that the lower court admitted testimony/evidence concerning his bad character, which denied him a fair and impartial trial. Specifically, the appellant points to three separate incidents of alleged error on the part of the trial court. First, he objects to Detective Thomas Booth's testimony which indicated that the appellant's photograph was obtained through a record's check, which would infer that the appellant had a prior criminal record. Second, the appellant objects to the testimony of Kathy Senkar in which she indicated that he told her he had hired some individuals from Lucasville to scare the victim. Last, the appellant objects to the admission of a CrimeStoppers flier which listed him as being a suspect in an unnamed crime. In sum, the appellant argues that the admission of evidence which indicated a prior criminal record prejudiced the jury and resulted in an impartial trial.
 {¶ 38} Addressing the testimony of Detective Booth, the appellant objects to the testimony concerning the manner in which Detective Booth obtained his photograph. He argues that the Detective's testimony caused the jury to infer that he had a prior criminal record. Specifically, Detective Booth testified that he did a record's check in order to obtain a picture of the appellant. The appellant contends that the jury could only conclude that he had a prior criminal record by virtue of his presence in the detective's record's check.
 {¶ 39} We note that the appellant failed to object to the testimony concerning the method in which the detective obtained his photo; therefore, absent plain error, the issue is waived. Crim.R. 52(B). Plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996),75 Ohio St.3d 163, 166. In reviewing the testimony of Detective Booth, we cannot conclude that the appellant was so prejudiced as to establish that the outcome of the trial would clearly have been different. Simply, the detective testified that he obtained the appellant's photograph by performing a record's check. There was no testimony regarding prior criminal history, convictions or criminal involvement which would prejudice the jury. The fact that the detective recovered a photo of the appellant does not in and of itself imply that the appellant has a previous criminal record. Moreover, in this day and age, one could easily conclude that the authorities would have the photograph of numerous law abiding citizens by virtue of a driver's license photo. Further, in relation to the detective's testimony, the state did not introduce or attempt to introduce evidence regarding the appellant's prior criminal history. As such, the jury was left to conclude any number of reasons why the detective was able to obtain the appellant's photo through a random record's check. See, also, State v. Cooper (1977), 52 Ohio St.2d 163;State v. Dye, (Dec. 23, 1998), Sandusky App. No. 5-87-56.
 {¶ 40} Second, the appellant contends that the testimony of Kathy Senkar, his live-in girlfriend and the mother of his child, was prejudicial because the testimony referenced Lucasville prison and could only lead the jury to infer that the appellant had a prior history of criminal behavior. The testimony in question was elicited by the prosecution on direct examination of Senkar. At trial, Senkar testified that she questioned the appellant concerning the murder of the victim, and the appellant told her that he had hired two men he knew from Lucasville prison to intimidate the victim or persuade the victim not to testify against him. At the conclusion of this testimony, counsel for the appellant moved for a mistrial based on Senkar's referencing of Lucasville prison, which motion was overruled by the trial court.
 {¶ 41} A trial court's denial of a motion for mistrial will not be reversed upon appeal absent an abuse of discretion. Apaydin v. ClevelandClinic Found. (1995), 105 Ohio App.3d 149, 152. An abuse of discretion is found where a decision is so grossly violative of fact and logic that it demonstrates a perverse will, a defiance of judgment, undue passion, or extreme bias. Huffman v. Hair Surgeon Inc. (1985), 19 Ohio St.3d 83, 87. Granting a mistrial is an extreme remedy which is only warranted in circumstances where a fair trial is no longer possible and it is required to meet the ends of justice. State v. Jones (1992), 83 Ohio App.3d 723,737. Mistrial is not properly granted merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected. State v. Luckens (1990),66 Ohio App.3d 794, 809.
 {¶ 42} This court is not prepared to say that the victim's improper reference to the appellant's past or past associates so damaged the fairness of the proceedings to warrant, in and of itself, a mistrial. State v. Garner (1995), 74 Ohio St.3d 49, 59. Moreover, the reference to the appellant's previous prison experience was brief, and the prosecution did not highlight the information. The state, in response to the appellant's motion for a mistrial, stated:
 {¶ 43} We believe that this is permissible evidence that it's coming from the appellant. It's not used as character evidence, but more so as an explanation of what he gave to his girlfriend at that time explaining his involvement in this homicide and that the jury should be fully aware * * *, even if one of those words is that he makes admissions that he had been to prison.
 {¶ 44} Further, in overruling the appellant's motion for a mistrial, the lower court inquired if the appellant sought to give the jury a limiting or cautionary instruction not to consider the fact that the appellant had a previous criminal history. In response, counsel for the appellant stated that rather than issue a limiting instruction, silence is recommended in order not to reinforce it again. As such, this court cannot conclude that the lower court abused its discretion in overruling the appellant's motion for mistrial based on the fleeting testimony that referenced his prior involvement with the penal system.
 {¶ 45} Third, the appellant argues that the admission of the CrimeStoppers flier was in error and only made it obvious to the jury that the appellant was wanted for a specific crime. Even though all information related to the nature of the offense was omitted on the flier, the appellant contends that the jury could only infer that he was wanted for a particular crime.
 {¶ 46} As with the appellant's previous contentions, this court cannot conclude that the appellant was prejudiced by the admission of the CrimeStoppers flier, nor can we conclude that the flier was introduced to show the appellant's bad character. Clearly, the flier was introduced to show that the appellant was aware and on notice of the fact that the authorities were searching for him in connection with the robbery of the victim. The fact that the appellant was aware of this fact provided the motive for him to execute the victim and went directly to the state's burden to prove the capital specification contained in R.C. 2929.04(A).
 {¶ 47} A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime. 1 Underhill's Criminal Evidence (6 Ed.), 595, Section 205. Evidence which tends to show that an accused has committed another crime wholly independent of the offense for which he is on trial is generally inadmissible. State v. Burson (1974), 38 Ohio St.2d 157; State v. Hector
(1969), 19 Ohio St.2d 167, Whiteman v. State (1928), 119 Ohio St. 285; 1 Underhill's Criminal Evidence, supra; 1 Wharton's Criminal Evidence (13 Ed.) 528, Section 240. The rule denying admissibility of evidence of other crimes is subject to certain exceptions. The only exceptions relevant in the present case are those codified in R.C. 2945.59:
 {¶ 48} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 49} In discussing the application of R.C. 2945.59, this court noted, in State v. Burson, supra (38 Ohio St.2d 157), at page 158, that "* * * evidence of other acts of a defendant is admissible only when it `tends to show' one of the matters enumerated in the statute and only when it is relevant to proof of the guilt of the defendant of the offense in question." See, also, Whiteman v. State (1928), 119 Ohio St. 285 (in certain classes of cases collateral offenses may be shown as reflecting upon the mental processes or mental attitude of the accused, where intent or guilty knowledge is an essential element of the crime for which the defendant is on trial, * * *, and more especially where such collateral offenses have been executed according to a plan or method, and it is shown that the accused persons committed such other offenses * * *.)
 {¶ 50} As such, this court can only conclude that the lower court did not err in admitting the CrimeStoppers flier because it highlighted the appellant's knowledge of the authorities' search for him, and it provided the impetus and motive for the appellant to kill the victim. The appellant's motive in murdering the victim was directly related to his knowledge that the victim had identified him as the perpetrator of the robbery and his desire to silence the victim to prevent his testimony.
 {¶ 51} The appellant's fourth assignment of error states:
 {¶ 52} IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN EXTENSIVE HEARSAY WAS OFFERED AT TRIAL.
 {¶ 53} Here the appellant argues that on numerous instances, hearsay testimony was admitted into evidence, and the cumulative effect of this testimony denied the appellant his right of confrontation and cross-examination. For the following reasons, the appellant's fourth assignment of error is without merit. Notably, the appellant concedes that many of the errors now alleged on appeal were not objected to at the trial court. Therefore, as previously stated, failure to object waives all but plain error. In order to prevail on appeal alleging plain error, the appellant must demonstrate to the reviewing court that, but for the trial court's error, the outcome of the trial would have clearly been different. State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 54} Of the alleged errors now on appeal, the appellant failed to object to the following testimony: 1) Detective Bly testified to what he had learned from his investigation about a purchase made by the appellant and what he was told about certain telephone calls made by the appellant; 2) Detective O'Malley testified to what Raymond Lestock relayed to him about the appellant's involvement in the murder; 3) Detective Spaetzel testified as to conversations which he had with Kathy Senkar; and 4) Robert Cutler, Sr. testified as to a conversation he had with his now-deceased son, the victim, Robert Cutler, Jr.
 {¶ 55} In reviewing the record and transcript of the proceedings, this court cannot conclude under the plain error analysis that the outcome of the trial would have been different absent the admission of the testimony noted above. The evidence presented at trial overwhelmingly established the appellant's guilt. The implication that testimony, which arguably amounted to hearsay, detrimentally harmed the appellant's trial so as to cause a manifest miscarriage of justice is without merit in light of the substantial evidence offered by the state in proving the appellant's guilt beyond a reasonable doubt.
 {¶ 56} Turning to the testimony which was objected to at trial, the appellant specifically argues that the admission of Detective Booth's testimony that statements given by the deceased, Robert Cutler, Jr., were consistent amounted to reversible error. At trial, Detective Booth testified that the statement which Robert Cutler, Jr. made on April 1, 1999 concerning the robbery was consistent with the statements made by him on December 10, 1999. The defense objected to Detective Booth's testimony.
 {¶ 57} Although hearsay, this court can only conclude that the error was harmless at best. Harmless error is defined as any error, defect, irregularity, or variance that does not affect substantial rights [and] must be disregarded. Crim.R. 52. This court must determine whether it appears beyond a reasonable doubt that the error complained of contributed to the verdict obtained. Any error will be deemed harmless if it did not affect the accused's "substantial rights." Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." Statev. Chapman, 386 U.S. at 24, 87 S.Ct. at 828. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. State v.Lytle (1976), 48 Ohio St.2d 391, paragraph three of the syllabus.
 {¶ 58} The testimony of the detective simply reiterated that the victim had maintained a consistent version of the events between questionings, and moreover, that the victim expressed concern for his safety because the assailant had taken his wallet, which readily identified his name and address. The appellant's contention that this testimony warrants a reversal is without merit since the testimony was harmless at best, and there is no reasonable possibility that the testimony contributed to a conviction. Appellant's fourth assignment of error is without merit.
 {¶ 59} The appellant's fifth assignment of error states:
 {¶ 60} V. DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL WHEN THE COURT PERMITTED TESTIMONY OF BLOOD SPATTER EVIDENCE.
 {¶ 61} The appellant argues that Curtis Jones was 1) not properly qualified as an expert in the area of blood spatter analysis, therefore, his testimony was inadmissible at trial; and 2) that the prosecution failed to provide a written report to the defense regarding the blood spatter testimony. For the following reasons, the appellant's fifth assignment of error is without merit.
 {¶ 62} Evid.R. 702, which controls the admission of expert testimony during the course of trial, provides that: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The determination of whether a witness possesses the qualifications necessary to allow expert testimony lies within the sound discretion of the trial court. In addition, the qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court. State v. Maupin (1975), 42 Ohio St.2d 473;State v. Minor (1988), 47 Ohio App.3d 22.
 {¶ 63} At trial, Curtis Jones testified that he is a trace evidence scientist with the Cuyahoga County Coroner's Office in the area of forensic science. The defense did not object to his qualifications in the area of trace evidence, rather, the appellant objected to the state's attempt to qualify Jones as an expert in the area of blood spatter analysis. The appellant based his objection on the fact that Jones had never before testified to blood spattering analysis, and he had only taken courses concerning blood spatter analysis. The state countered by pointing to the fact that Jones would not be providing expert testimony as to how or in what manner the victim was killed, rather, his testimony was being elicited to simply give the jury an overview of the science of blood spatter analysis. Specifically, the state argued:
 {¶ 64} What I intend for Mr. Jones to testify to is the general indoctrination to the jury of the science of blood spatter analysis since it is beyond the realm of just a person's ordinary knowledge and that people have developed a specific scientific body of work.
 {¶ 65} In the case at hand, we agree with the lower court's determination that Jones be permitted to testify concerning blood spatter analysis. First, this court cannot agree with the appellant's contention that Jones was not qualified as an expert. The witness testified that he was a trace evidence scientist with the Cuyahoga County Coroner's Office, which often included blood spatter analysis. Further, the witness testified to continuing his education by studying the more intricate details of blood spatter analysis. Last, as with any expert witness, that witness must at some point in time be qualified for the first time as an expert in a certain field. The fact that the witness may have limited opportunities to testify before a court of law does not limit his knowledge of the subject in any manner.
 {¶ 66} Moreover, assuming arguendo that Jones should not be qualified as an expert, his testimony is nevertheless admissible under Evid.R. 701. Evid.R. 701 provides: If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perceptions of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue. In State v.Whittsette, (Feb. 13, 1977) Cuyahoga App. No. 70091, this court held that a police detective's testimony that he doubted a wound was caused by a .22 caliber gun was properly admitted under Evid.R. 701. The officer based his opinion on his familiarity with guns and past observances of gunshot wounds. In State v. Norman (1982), 7 Ohio App.3d 17, this court held that a police officer properly testified as a non-expert in regard to the shot pattern made by a 12-gauge shotgun. In State v. Morris
(1982), 8 Ohio App.3d 12, this court held the trial court correctly admitted the testimony of a police officer that a gun had not been fired after smelling the barrel. In State v. Moore (Feb. 12, 1999), Lucas App. No. L-97-1448, the Sixth District Court of Appeals held that a police officer could give non-expert testimony that a stain appeared to be blood.
 {¶ 67} In State v. Banks (June 15, 2000), Cuyahoga App. No. 76271, the appellant objected to a police officer's testimony revolving around his statement that a knife wound would result in a blood spatter at the time of the stabbing. This court held that the fact that a liquid will spurt out after the sudden release of pressure hardly is a fact beyond the experience of the average person requiring an expert opinion.Id. at 13. The officers testified about facts which they themselves observed based upon their personal experiences. Id. The testimony was properly admitted as lay opinion evidence under Evid.R. 701. Id. As in Banks, the testimony of Jones, which provided a general overview of the science of blood spatter analysis, was not prejudicial because Jones was 1) properly qualified as an expert, and 2) even assuming arguendo that he was not qualified, his testimony was admissible as his testimony was hardly a fact beyond the experience of the average person.
 {¶ 68} Last, the appellant contends that the state failed to provide the appellant with a copy of a written report outlining the testimony of Jones. Crim.R. 16(B)(1)(d) requires that upon motion of the defendant, the state shall provide any reports prepared in connection with this criminal case. In the instant matter, no report was prepared in this case, and further, the witness did not conduct any examinations, experiments or tests in connection with this case. Simply, the witness testified as to a general overview of the science of blood spatter analysis. The witness did not provide any type of testimony as to his opinion concerning the manner, time, or location of the victim's death in the case at hand.[2] As such, the appellant's fifth assignment of error is without merit.
 {¶ 69} The appellant's sixth assignment of error states:
 {¶ 70} VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ALLOWED STATEMENTS MADE BY THE DEFENDANT AFTER HIS ARREST WHEN THE POLICE KNEW HE HAD AN ATTORNEY.
 {¶ 71} Essentially, the appellant argues that after he was arrested, the Bay Village police department questioned him even though they were aware of the fact that he had an attorney. In doing so, the appellant contends, he was denied his right to counsel and his right against self-incrimination.
 {¶ 72} The appellant was arrested for the aggravated robbery of Robert Cutler, Jr. He was read his Miranda rights, and the evidence is uncontroverted that he made a voluntary, knowing and intelligent waiver of his rights. Notably, the appellant does not contest the fact that he made a voluntary waiver. Therefore, this court cannot conclude that the appellant's right against self-incrimination or his right to counsel were violated. As such, the appellant's sixth assignment of error is not well taken.
 {¶ 73} The appellant's seventh assignment of error states:
 {¶ 74} VII. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO KNOW THE NATURE AND CAUSE OF THE ACCUSATION WHEN THE INDICTMENT DID NOT SPECIFY ANY FACTS TO SUPPORT THE DEATH PENALTY SPECIFICATION.
 {¶ 75} The appellant contends that he was prejudiced because the bill of particulars and the indictment merely recited the language of the statute, therefore, the appellant argues, he was not afforded due notice of the death penalty specification.
 {¶ 76} This assignment is without merit. Essentially, the appellant argues that the indictment and bill of particulars failed to list all the evidence which the state intended to introduce at trial in support of the capital specification. In State v. Sellards (1985),17 Ohio St.3d 169, 171, the Ohio Supreme Court stated:
 {¶ 77} A bill of particulars has a limited purpose to elucidate or particularize the conduct of the accused alleged to constitute the charged offense * * *. A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery. Citing, State v. Dinsio (1964), 4 Ohio App.2d 309.
 {¶ 78} A review of the record indicates that the appellant was fully aware of the charges being levied against him in light of the 48 pretrial motions. Moreover, the appellant was fully apprized of the prosecution's intent to try the aggravated robbery (Case No. 388128) and the aggravated murder (Case No. 402316) together. Last, and most damaging, the indictment and bill of particulars specifically outline the capital specifications which the prosecution intended to pursue in this case.
 {¶ 79} The appellant's assignment is without merit and frivolous at best. He has failed to present one iota of evidence to support the instant assignment.
 {¶ 80} The appellant's eighth assignment of error states:
 {¶ 81} VIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO INSTRUCT ON THE LESSER INCLUDED OFFENSE OF MURDER IN THIS CAPITAL CASE PROSECUTION.
 {¶ 82} The appellant was charged with aggravated murder with a death penalty specification. At trial, the lower court refused to charge the jury with a lesser included offense of murder. The appellant contends that this refusal to charge the jury with the lesser included offense of murder denied him of his due process rights. Murder is a lesser included offense of aggravated murder with prior calculation and design. State v.Spirko (1991), 59 Ohio St.3d 1, 33.
 {¶ 83} The Ohio Supreme Court has held that instructing on a lesser included offense is only required where the evidence presented at trial would reasonably support both an acquittal on the crime charged (aggravated murder) and a conviction upon the lesser included offense.State v. Sheppard (1998), 84 Ohio St.3d 230. The trial court should give an instruction on a lesser included offense only when the evidence warrants it. State v. Johnson (1988), 36 Ohio St.3d 224, 226. The trial court must charge the jury on a lesser included offense only when the evidence would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. State v. Thomas (1988),40 Ohio St.3d 213 at paragraph two of the syllabus. For example, a trial court will give an instruction on the lesser included offense of involuntary manslaughter in a murder trial only when the jury could reasonably find against the state on the element of purposefulness and still find for the state on the defendant's act of killing another. However, an instruction is not warranted every time "some evidence" is presented on a lesser included or inferior degree offense. State v. Shane
(1992), 63 Ohio St.3d 630, 632-33.
 {¶ 84} In reviewing the evidence and record, this court cannot conclude that the lower court erred in failing to instruct the jury on the lesser-included offense of murder. The evidence adduced at trial clearly shows that the victim was lured to his execution, that there was no evidence of struggle, and that the victim met his death by three bullets to the back of his head. The fact that the appellant lured the victim to the scene of his death clearly reflects prior calculation and design by the appellant. As stated by the state at trial,
 {¶ 85} The only question is identity of this murderer. It is clear from the facts that this was with prior calculation and design and the charge should be aggravated murder. There is no evidence to show this is murder.
 {¶ 86} In light of the above and from the evidence adduced at trial, the appellant's eighth assignment of error is without merit.
 {¶ 87} The appellant's ninth assignment of error states:
 {¶ 88} IX. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO GRANT A MISTRIAL DURING THE PHASE OF THE TRIAL WHEN THE JURY REPORTED A DEADLOCK AND WERE THEREAFTER COERCED TO RETURN A VERDICT ON THE GUILT STAGE OF THE PROCEEDINGS.
 {¶ 89} The appellant argues that the lower court coerced the jury into returning a verdict of guilty because it did not give a balanced instruction conveying that the jury had the option of not agreeing. This assignment is without merit.
 {¶ 90} The Ohio Supreme Court, in State v. Howard (1989),42 Ohio St.3d 18, approved a supplemental charge to be given to juries which have become deadlocked on the question of conviction or acquittal. In the instant matter, the record is clear that the trial judge properly instructed the jury utilizing the Howard charge. Since the Howard charge has been repeatedly held to be non-coercive, the jury could not have been coerced into returning a verdict of guilty, nor is coercion demonstrated.
 {¶ 91} The appellant's tenth assignment of error states:
 {¶ 92} X. DEFENDANT WAS DENIED DUE PROCESS OF LAW AND HIS RIGHT OF TRIAL BY JURY WHEN HE WAS SENTENCED BY THE COURT TO LIFE WITHOUT PAROLE WHEN THE JURY COULD NOT UNANIMOUSLY AGREE ON A SENTENCE.
 {¶ 93} The appellant argues that the lower court erred in sentencing him to life in prison without parole when the jury failed to reach a unanimous recommendation at the sentencing phase.
 {¶ 94} In State v. Springer (1992), 63 Ohio St.3d 167, 173, the Ohio Supreme Court held, When a jury becomes irreconcilably deadlocked during its sentencing deliberations in the penalty phase of a capital murder trial and is unable to reach a unanimous verdict to recommend any sentence authorized by R.C. 2929.03(c)(2), the trial court is required to sentence the offender to life imprisonment with parole eligibility after serving twenty full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment.
 {¶ 95} Since the lower court complied with Springer, supra, in sentencing the appellant to life without parole, the appellant's assignment of error is without merit and frivolous.
 {¶ 96} The appellant's eleventh assignment of error states:
 {¶ 97} XI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR JUDGMENT OF ACQUITTAL AS THERE WAS NO EVIDENCE OF PRIOR CALCULATION AND DESIGN NECESSARY FOR A CONVICTION OF AGGRAVATED MURDER.
 {¶ 98} The appellant argues in his eleventh assignment of error that the lower court erred in denying his motion for acquittal, at least on the element of prior calculation and design. For the following reasons, the appellant's assignment of error is not well taken.
 {¶ 99} Prior calculation and design require a scheme designed to implement the calculated decision to kill. State v. Cotton (1978),56 Ohio St.2d 8, 11. Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified. Id. at paragraph three of the syllabus.
 {¶ 100} As previously discussed during the analysis of the appellant's eighth assignment of error, the record is replete with overwhelming evidence delineating the manner in which the appellant planned and calculated the execution of the victim. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 101} In applying the above sufficiency analysis, this court cannot conclude that the lower court erred in denying the appellant's motion for acquittal. See, Jenks, supra, (the verdict will not be disturbed unless it is determined that reasonable minds could not have reached the conclusion reached by the trier of fact). There is no bright line test that emphatically distinguishes between the presence or absence of prior calculation and design because each case turns on the particular facts and evidence presented at trial.
 {¶ 102} The appellant's twelfth assignment of error states:
 {¶ 103} XII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION FOR JUDGMENT OF ACQUITTAL WAS DENIED.
 {¶ 104} In his final assignment of error, the appellant argues that there was not sufficient evidence to convict, therefore, the lower court erred in denying his motion for judgment of acquittal.
 {¶ 105} As previously stated, under Crim.R. 29, a trial court shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. A motion for judgment of acquittal under Crim.R. 29(A) should only be granted where reasonable minds could not fail to find reasonable doubt. State v.Apanovitch (1987), 33 Ohio St.3d 18, 23.
 {¶ 106} Thus, the test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. See State v. Bell (May 26, 1994), Cuyahoga App. No. 65356. InState v. Jenks (1991), 61 Ohio St.3d 259, 273, the Ohio Supreme Court set forth the test an appellate court should apply when reviewing the sufficiency of the evidence to support a conviction:
 {¶ 107} [T]he relevant inquiry on appeal is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169. See, also, Jackson v. Virginia (1979), 443 U.S. 307; 99 S.Ct 2781; 61 L.Ed.2d 560.
 {¶ 108} In reviewing the evidence and testimony adduced at trial, there is simply no evidence to indicate that the jury lost its way and created a manifest miscarriage of justice. The record is replete with evidence upon which any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. As repeated throughout the instant opinion, the evidence and testimony presented at trial puts the appellant in Bay Village on the day of the murder, even though the appellant alleged he was either at work or returning from work due to an illness. Moreover, the evidence indicates that the appellant had the motive to murder the victim in order to prevent his testimony on the aggravated robbery charge. Simply, the state presented sufficient testimony upon which the jury could have based its guilty verdict.
 {¶ 109} As such, the appellant's twelfth and final assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., CONCURS.
TIMOTHY E. McMONAGLE, A.J., CONCURS IN JUDGMENT ONLY.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] The capital specification of murder to escape an accounting for another crime was later dismissed by the prosecutor.
[2] Appellant had the opportunity to question the witness outside of the presence of the jury.